UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 11-23257-Civ-SCOLA

REGIONS BANK,

    Plaintiff,
vs.

COMMONWEALTH LAND
TITLE INSURANCE CO.,

    Defendant.
_____/

### ORDER DENYING CROSS MOTIONS FOR SUMMARY JUDGMENT

This is an insurance-coverage-dispute case. On June 25, 2013, the Court held a hearing on the parties' cross motions for summary judgment. The parties, through their counsel, have both done an excellent job of marshaling the evidence and presenting their arguments. They have done such a good job, however, that they have created a bounty of genuine issues of material fact. Given these factual disputes, summary judgment is not warranted for either side. *See Great Am. Assur. Co. v. Sanchuk, LLC*, No. 10-2568, 2012 WL 3112004, at *7-8 (M.D. Fla. July 30, 2012) (finding that genuine issues of material facts precluded summary judgment on a reformation claim); *accord Noack v. Blue Cross & Blue Shield of Fla.*, 859 So. 2d 608, 611 (Fla. 1st DCA 2003).

### Background[1]

This case involves a plan to develop residential housing on a track of land in Fort Myers, Florida. The initial plan was for Prime Enterprises, LLC to purchase the property, for approximately $36 million, with money loaned by Regions Bank. Regions Bank would receive a mortgage on the property securing the loan. For some reason, Prime Enterprises, LLC was not able to close on the property by the designated date so Prime Homebuilders, Inc. stepped in and loaned Prime Enterprises, LLC the purchase money until the Regions Bank loan could be finalized, in order to prevent the deal from falling through.

The development of the land was initially limited to 432 residential units, pursuant to a 2004 covenant that ran with the land. The developer of the property was Paul H. Freeman. Freeman had the right to add additional residential units, thereby increasing the total number of residential units that could be built on the land and sold. In 2005, Freeman sold the right to build an additional 392 residential units on the land to Prime Homes, Inc. This sale was

---

[1] The facts in this background are primarily taken from the parties' statement of uncontested facts presented in their Joint Pretrial Stipulation (ECF No. 283).

memorialized in a document titled Purchase and Sale Contract for Density Units ("Density Agreement").  The Density Agreement was not recorded, by design, but it required that a Memorandum reflecting its existence be recorded.  The Density Agreement stated that the Memorandum would serve as a lien against the Property, and that the lien would be prior to any mortgage or other lien against the Property.

On February 14, 2006, Regions Bank's Executive Credit Committee approved an acquisition, development and construction loan for $36,300,000 to Prime Enterprises, LLC.  This loan was to be secured by, among other things, a mortgage on the property and a collateral assignment to Regions Bank of the Density Agreement.  On February 21, 2006, Regions issued a commitment letter on the proposed $36.3 million loan to the attention of Larry Abbo, who is a principal of the Prime Entities.  On March 16, 2006, Prime Enterprises, LLC delivered to Prime Homebuilders, Inc. two promissory notes totaling $36,300,000, secured by a mortgage encumbering the Property.  Steven B. Greenfield, who the policy-issuing agent for Commonwealth and legal counsel for the Prime Entities and Abbo, recorded the Prime Enterprises, LLC/Prime Homebuilders, Inc. Mortgage on March 17, 2006.  Commonwealth issued a title insurance policy, effective March 17, 2006, to Prime Homebuilders, Inc. as the named insured.

On March 30, 2006, Prime Homes at Portofino Vineyards, Ltd., one of the Prime Entities, and Freeman executed a Memorandum memorializing the existence of the Density Agreement (as contemplated by the Density Agreement).  That Memorandum was recorded by Greenfield on March 31, 2006.  Also on March 30, 2006, Prime Homes at Portofino Vineyards, Ltd. and Prime Homebuilders, Inc. executed an agreement to subordinate the mortgage held by Prime Homebuilders, Inc. to the lien created by the Density Agreement Memorandum.  That Subordination Agreement was recorded by Greenfield on April 6, 2006.

On that same day, March 30, 2006, Regions closed on the $36.3 million loan.  Prime Homebuilders, Inc. assigned the Mortgage and the two promissory notes to Regions Bank.  Greenfield recorded this assignment on April 12, 2006.  Also on March 30, 2006, Prime Homes at Portofino Vineyards, Ltd. assigned its interest in the Density Agreement (*i.e.*, Prime's right to utilize Freeman's extra density) to Regions Bank.

In July 2008, at the request of Steven Goldman, Esq., then counsel to Regions Bank, Greenfield issued Endorsement 5 to the title insurance policy, with an effective date of April 28, 2006. Endorsement 5 reads that the following documents were subordinate to Regions Bank's mortgage: (1) the Density Agreement Memorandum, (2) the Subordination Agreement, and (3) the Consent and Recognition Agreement (an agreement between Prime Enterprises, LLC, Prime

Homes at Portofino Vineyards, Ltd., Regions Bank, and Freeman that basically recognized the existence of Density Agreement).

Unfortunately, the project was not successful and in 2010 Regions Bank notified Commonwealth of its intent to foreclose on the property. That foreclosure action, which is pending in Florida state court, has pitted Regions Bank against Freeman in a dispute over whose interest is superior. Regions Bank asked Commonwealth to defend and indemnify it, pursuant to the title insurance policy, since Freeman was claiming a superior interest in the property. Commonwealth refused. According to Commonwealth, it was always understood, and was the intent of the parties, that Freeman's lien would be superior to Regions Bank's mortgage. Regions Bank counters that it never agreed to Freeman's lien being superior and clearly purchased title insurance to cover its first-priority mortgage.

Regions Bank filed this suit alleging that Commonwealth breached its insurance contract by failing to defend and indemnify Regions Bank in the state-court, foreclosure action. Regions Bank also seeks a declaratory judgment that Commonwealth has a duty to defend and indemnify it against Freeman's claims. Commonwealth has countersued, seeking to reform Endorsement 5. According to Commonwealth, based upon the parties agreement Endorsement 5 should have read that the title insurance policy does not insure against loss or damage by reason of Freeman's interest. Commonwealth explains that it was a scrivener's error that Endorsement 5 actually reads the opposite of that agreement. Commonwealth also seeks a declaratory judgment that insurance coverage for Freeman's claims is excluded under terms of the title insurance policy. Both parties have filed motions for summary judgment. Because there are genuine issues of material fact, summary judgments must be denied.

## LEGAL STANDARDS

Under Federal Rule of Civil Procedure 56, "summary judgment is appropriate where there 'is no genuine issue as to any material fact' and the moving party is 'entitled to a judgment as a matter of law.'" *Alabama v. North Carolina*, 130 S. Ct. 2295, 2308 (2010) (quoting Fed. R. Civ. P. 56(a)). The Court must view the evidence in the light most favorable to the nonmoving party, and summary judgment is inappropriate where a genuine issue material fact remains. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158-59 (1970). "An issue of fact is 'material' if, under the applicable substantive law, it might affect the outcome of the case." *Hickson Corp. v. N. Crossarm Co.*, 357 F.3d 1256, 1259-60 (11th Cir.2004). "An issue of fact is 'genuine' if the record taken as a whole could lead a rational trier of fact to find for the nonmoving party." *Id.* at 1260. A court may not weigh conflicting evidence to resolve disputed factual issues; if a genuine

dispute is found, summary judgment must be denied. *Skop v. City of Atlanta, Ga.*, 485 F.3d 1130, 1140 (11th Cir. 2007).

## ANALYSIS

As evidenced by the parties' lengthy summary-judgment briefing and meticulously cited statements of facts, genuine issues of material fact abound at every turn. Still, a few minor points of law can be addressed through this Order that will provide some guidance to the parties in preparing for trial.

1. <u>Should Commonwealth's Reformation Claim Be Addressed Before The Question of Commonwealth's Duty to Defend?</u>

Regions Bank argues that, as a matter law, the question of whether Commonwealth owes a duty to defend should be determined before Commonwealth's reformation claim is addressed. Commonwealth disagrees. While the parties have cited to contradictory case law, no controlling precedent has been presented to the Court. The Court believes the better practice is to decide the reformation claim first, before delving into the coverage determination.

Recently, the Fifth Circuit Court of Appeals addressed this precise issue. In *Technical Automation Services, Corp. v. Liberty Surplus Insurance, Corp.*, 673 F.3d 399, 409 (5th Cir. 2012) the court held that where there was a genuine issue about a material fact as to whether an insurance policy endorsement should be reformed based upon a mutual mistake, a trial court must consider the reformation claim before considering the insurer's duty to defend. This rationale makes sense. A reformation claim is predicated upon the parties' mutual mistake. *BrandsMart U.S.A. of W. Palm Beach, Inc. v. DR Lakes, Inc.*, 901 So. 2d 1004, 1005 (Fla. 5th DCA 2005). A reformation claim in no way seeks to interpret or change the agreement of the parties; the goal of a reformation is to correct (*i.e.*, reform) a contract "so that it accurately reflects the true terms of the agreement actually reached." *Goodall v. Whispering Woods Ctr., L.L.C.*, 990 So. 2d 695, 699 (Fla. 4th DCA 2008). It appears that Florida courts have followed this order in the past. *See, e.g., Boston Old Colony Ins. Co. v. Popple*, 305 So. 2d 877, 878 (Fla. 1st DCA 1974) (addressing reformation question before coverage question).

It naturally follows that in order to accurately decide a party's obligations under a contract a court should begin by analyzing the parties' *actual* agreement, as reformed, so as to not be misled by a mutual mistake. Given the facts of this case, specifically the language of Endorsement 5 (which Commonwealth seeks to reform), it would be a waste of resources to have the Court decide the coverage question, then go back and entertain the reformation claim because if the reformation claim is successful, the Court would again be faced with re-evaluating coverage under the reformed contract. For these reasons, the reformation claim will be addressed prior to the determination of Commonwealth's duty to defend.

2. <u>What Evidence Will Be Admissible For Commonwealth To Establish Its Reformation Claim?</u>

Commonwealth's reformation claim is a hotly contested factual question. Commonwealth cites to a body of evidence to support its assertions that Regions Bank was aware that Freeman's lien would be superior, and knowingly accepted an inferior mortgage lien as a strategic business decision. (Commonwealth Mot. Summ. J. 1-19, ECF No. 255.) Regions Bank counters with evidence of its own, demonstrating that Regions Bank did not accede to the superiority of Freeman's lien, and that it negotiated, and paid for a title policy that insured its loan as a *first* mortgage. (Regions Bank Mot. Summ. J. 3-8, 18-31, ECF No. 219.)

Regions Bank argues that parol evidence is not admissible to establish a reformation claim. But that is not the law. *See Providence Square Ass'n, Inc. v. Biancardi*, 507 So. 2d 1366, 1371 (Fla. 1987) ("In a reformation action . . . parol evidence is admissible for the purpose of demonstrating that the true intent of the parties was something other than that expressed in the written instrument."). Accordingly, this Court will consider parol evidence in evaluating the reformation claim.

3. <u>Which Set Of Pleadings Will Inform The Court's Analysis as To Whether Commonwealth Has a Duty To Defend Regions Bank In The Foreclosure Action?</u>

Under Florida law, an insurance company's duty to defend is determined, as a matter of law, through a comparison of the insurance policy and the allegations in the operative pleading against the insured. *See Trailer Bridge, Inc. v. Ill. Nat. Ins. Co.*, 657 F.3d 1135, 1141-42 (11th Cir. 2011). In this case, the reformation claim (with its accompanying disputed facts) must be resolved before the Court can address the duty-to-defend question.

The parties' disagree on which set of pleadings will inform the Court's duty-to-defend evaluation. Regions Bank argues that Freeman's initial pleadings and claims give rise to coverage, and that once the duty to defend arises it continues throughout the case. (Regions Mot. Summ. J. 25, ECF No. 241.) Commonwealth asserts that coverage is determined from evaluating only the most recent pleading – which in this case appears to be Freeman's Amended Answer, Affirmative Defenses and Second Amended Counterclaim/Crossclaim, filed on November 8, 2011.

Under Florida law, "[o]nce the insurer's duty to defend arises, it continues throughout the case unless it is made to appear by the pleadings that the claims giving rise to coverage have been eliminated from the suit." *Baron Oil Co. v. Nationwide Mut. Fire Ins. Co.*, 470 So. 2d 810, 815 (Fla. 1st DCA 1985). But, "where an amended complaint alleges facts that clearly bring the entire cause of action within a policy exclusion, and the amended complaint contains no additional counts or causes of action which show coverage, the allegations in the amended

complaint control and the insurer's duty to defend comes to an end." *Id.* Accordingly, following the determination of the reformation claim, if necessary, the Court will look to Freeman's operative pleading to evaluate Commonwealth's duty to defend.

4. Does The Statute Of Limitations Bar Commonwealth's Reformation Claim?

Regions Bank raises the five-year statute of limitations as an affirmative defense to Commonwealth's reformation claim. According to Regions Bank, the clock began to run on the reformation claim when the title insurance policy was initially issued in August 2006 (thus the statute of limitations expired in August 2011). This argument fails because the written instrument that Commonwealth's reformation claim is seeking to reform is a policy endorsement (Endorsement 5) that was not issued until 2008. Thus the statute of limitations had not run when Commonwealth brought its claim in October 2012. The parties remaining affirmative defenses have either been resolved through this Order, or are tangled up within the web of disputed factual issues that will be resolved at trial.

## CONCLUSION

The parties' declaratory judgment claims – seeking a determination as to whether title insurance coverage exists to require Commonwealth to defend and indemnify Regions Bank in the underlying state court, foreclosure action – must await resolution of Commonwealth's claim for reformation of Endorsement 5. The Court will hear evidence on the reformation claim at the upcoming bench trial. After the reformation question has been decided, the Court will issue its ruling on the coverage question, which will be determined as a matter of law.

Because of the numerous genuine issues of material facts in this matter, and for the reasons explained above, it is **ORDERED** that the parties' cross motions for summary judgment (ECF Nos. 219 & 225) are **DENIED**. Relatedly, Regions Bank's Motion to Strike Commonwealth's Reply to Regions Bank's Response to Commonwealth's Statement of Material Facts (ECF No. 250) is **DENIED**.

**DONE and ORDERED** in chambers at Miami, Florida on June 26, 2013.

_____
ROBERT N. SCOLA, JR.
UNITED STATES DISTRICT JUDGE